UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEDRO PEREZ,

    Plaintiff,

vs.                    Case No. 8:19-cv-951-T-33AEP

CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Cigna Health and Life Insurance Company's Motion for Summary Judgment (Doc. # 46), filed on January 3, 2020. Pro se Plaintiff Pedro Perez responded in opposition on February 4, 2020. (Doc. # 54). Cigna filed a reply on February 18, 2020 (Doc. # 65), as well a Rule 56(c) objection. (Doc. # 66). Perez responded to the Rule 56(c) objection on March 2, 2020. (Doc. # 68). For the reasons that follow, the Motion is granted.

**I.   Background**

Perez worked for Cigna, a health and life insurance company, as a senior business analyst in Connecticut beginning in August 2014. (Perez Dep. Doc. # 47-1 at 37:20-24). Perez's job involved resolving "tickets" assigned to him

1

regarding problems with Cigna's pharmacy systems, addressing customer needs, providing support to the call center, and "acting as a liaison between IT and the business." (Id. at 35:2-13; Doc. # 52-5 at 1).

In 2016, Perez began working from home and soon after moved to Tampa, Florida. (Perez Dep. Doc. # 47-1 at 37:14-38:7). To become a work-at-home employee, Perez signed a work-at-home agreement, agreeing to comply with Cigna's work-at-home policy. (Id. at 39:20-40:23, 41:3-7, 59:5-21; Doc. # 50-2 at 8-11, 17-27). Cigna pays for the business internet connection for work-at-home employees and provides the modem needed for a direct connection with Cigna's C-live system. (Perez Dep. Doc. # 47-1 at 60:6-61:2; Doc. # 52-5 at 6; Doc. # 52-6 at 2). During his deposition, Perez acknowledged that, in August 2018, he did not inform his service provider, Brighthouse, that he had moved to a new address for purposes of his business internet service. (Perez Dep. Doc. # 48-1 at 171:7-22; Doc. # 52-6 at 3).

Perez's various supervisors over the years have noted that Perez did not always timely complete assignments and had issues with organizing and prioritizing issues that needed to be addressed. (Doc. # 52-2 at 1; Doc. # 52-3 at 1-2; Doc. # 52-5 at 1-3).

Perez's wife, Glenda, also worked at Cigna in a different role. (Doc. # 54-2 at 1). Her employment was terminated on July 27, 2017, and she initiated an arbitration against Cigna for racial discrimination and retaliation in violation of Title VII. (Id.). Eventually, Cigna obtained summary judgment in that arbitration in July 2018. (Id.).

While his wife's arbitration was still pending, in late August 2017, Perez took spousal leave to support his wife. (Perez Depo. Doc. # 47-1 at 80:5-20; Doc. # 54-1 at 1). At the time, he told his then-supervisor, Grace Kania, that he needed to support his wife who had filed a "wrongful suit" against Cigna and that he would be a witness in her case. (Perez Depo. Doc. # 47-1 at 80:5-84:22). When Perez returned from leave in September 2017, Kania gave him a verbal warning concerning his issues with consistency, timeliness, and organization. (Doc. # 52-2 at 1; Perez Dep. Doc. # 47-1 at 131:3-18). This verbal warning was motivated in part by Perez's failure to have a co-worker cover his assignments while he was out on leave. (Doc. # 52-2 at 12; Perez Dep. Doc. # 47-1 at 131:3-18).

Subsequently, in December 2017, Kania issued Perez a written warning known as a Performance Corrective Action Plan (PCAP) regarding his continued issues. (Doc. # 52-2 at 1;

Perez Dep. Doc. # 48-1 at 234:7-9). As a result of the December 2017 PCAP, Perez filed a complaint through Cigna's internal system — Speak Easy — on December 21, 2017, alleging that the PCAP was inappropriate. (Doc. # 52-4 at 2, 6, 8). Marjorie Stein, from Cigna's Employee Relations Department, investigated the Speak Easy complaint and spoke to Perez on December 27, 2017. (Id. at 2). Initially, Perez told Stein he wanted to overturn the PCAP; however, later in the conversation, Perez admitted "he was not meeting the performance expectations of his role as set out as the justification of the PCAP" and thus was only challenging "the timing of when [the PCAP] was sent to him." (Id.). Perez "also stated he was being retaliated against because his wife had requested arbitration with the company." (Id.).

Stein then contacted Kania to discuss Perez's allegations. (Id. at 3). Kania explained her reasons for issuing the PCAP, including Perez's continuing performance deficiencies. (Id.). Stein asked Kania whether "she was aware [] Perez's wife had been terminated from Cigna and brought legal action against" Cigna, but Stein "did not mention what type of legal action [] Perez's wife had raised." (Id.). Kania "denied knowing either that [Perez's] wife had been terminated or that she had asserted a legal claim against

Cigna." (Id.). Ultimately, Stein determined that the issuance of the PCAP was appropriate. (Id.).

Then, in January 2018, Kania and Kara Shipman — "a second level up supervisor for . . . senior business analysts" like Perez — reviewed the PCAP. (Doc. # 52-2 at 2; Doc. # 52-3 at 2). The options were to "remove him from the PCAP for improved performance," "extend the PCAP to allow more time to improve," or "proceed to termination." (Doc. # 52-3 at 2). Ultimately, Kania and Shipman decided to extend the PCAP because "he had not met his goals, but [they] wanted to give him another opportunity because he generally had a positive attitude and . . . wanted to improve." (Id.). The PCAP extension was delivered to Perez on January 31, 2018. (Doc. # 52-2 at 2). At this time, Kania "was not aware of the nature of [] Perez's wife's legal action but had only been told by [] Stein that she had supposedly raised a legal claim." (Id.). The decision to extend the PCAP "had nothing to do with [] Perez's wife's legal action." (Id.; Doc. # 52-3 at 1).

On April 18, 2018, Perez contacted Shipman and requested time off to deal with "personal issues" and mentioned "he was being deposed in connection with his 'wife's case.'" (Doc. # 52-3 at 2). However, Shipman "did not know what his 'wife's case' was and [she] did not [for] ask additional detail[s]."

(Id.). Perez acknowledged that he did not tell Shipman that his wife's claim was related to Title VII. (Perez Dep. Doc. # 47-1 at 147:25-149:7). Sometime that month, Perez was deposed as a witness for his wife's arbitration against Cigna. (Id. at 144:15-20, 151:12-14).

Perez came back to work on June 1, 2018. (Doc. # 52-3 at 3). On June 4, 2018, Perez had a phone call with Shipman and his new direct supervisor, Lashonda Bowens, who was replacing Kania. (Id.; Doc. # 52-5 at 1-2).

Bowens decided to renew Perez's PCAP and gave Perez the extension on June 22, 2018. (Doc. # 52-5 at 2; Doc. # 52-3 at 3). As a result of this PCAP extension, Perez filed another Speak Easy complaint. (Doc. # 52-4 at 2-3). Perez alleged that the PCAP was extended in retaliation because he had been "a witness" for his wife's case. (Id.). Stein investigated this Speak Easy complaint but ultimately determined that the PCAP extension was not retaliatory. (Id.).

Around this time, in August of 2018, Perez helped his wife hire a process server to serve Cigna with a motion to vacate the arbitration award. (Perez Dep. Doc. # 47-1 at 145:8-146:19, 150:21-24; Doc. # 54-2 at 2). Perez did not tell anyone at Cigna in advance that he would be helping his wife procure a process server. (Perez Dep. Doc. # 47-1 at

150:20-151:2). Perez initially testified in his deposition that, when he was having internet connection difficulties in August 2018, he told Bowens that he "believe[d] [his] internet connection had to do with [him] following up with a process server." (Id. at 150:20-151:10). Yet, upon further examination, Perez admitted that he merely told Bowens that he believed the connection disruption was "intentional" and that Bowens "did not want to engage any further on the topic." (Perez Dep. Doc. # 48-1 at 214:23-215:23).

On Friday August 17, 2018, Perez notified Cigna that he had lost his network connection and provided Cigna a phone number at which to reach him. (Doc. # 52-6 at 1, 5-11; Doc. # 52-5 at 4). After notifying Cigna of the issue, Perez did no further work that day. (Doc. # 52-5 at 7-8; Perez Dep. Doc. # 48-1 at 173:12-174:15).

A Cigna IT employee, Nick Pedulla, was assigned to resolve Perez's connection issue. (Doc. # 52-6 at 1, 5-11). Over the next five days, Pedulla and Bowens called Perez numerous times at the phone number he gave, as well as at other phone numbers Cigna had on file for him. (Id. at 1-11; Doc. # 52-5 at 4-7). Perez did not answer most of the phone calls. (Doc. # 52-6 at 1-11; Doc. # 52-5 at 4-7).

In his declaration, Perez explained that he had difficulty remaining in contact with Bowens and Pedulla because he has "limited resources" and he "rel[ied] on a pre-paid phone app that worked only over WIFI and [he] lived in a remote area requiring [him] to drive five minutes out to a local dentist office" to use that office's public WIFI to contact Bowens and Pedulla by phone or email. (Doc. # 54-1 at 2). At some point during the week of August 20, Perez told Bowens over voice mail that he "did not have enough money to connect with her until pay period August 23, 2018." (Id.).

Mid-day Monday, August 20, 2018, Perez left Bowens a voicemail asking her to email him at a private email address. (Doc. # 52-5 at 4). Bowens did so, explaining that she had just attempted to call Perez again with no answer and providing Perez with Pedulla's phone number. (Id. at 4, 47). She asked that he "[p]lease connect with [Pedulla] ASAP so he [could] get [Perez] back up and running" and also gave Perez her cell phone number. (Id.). Because Perez did not respond, Bowens emailed Perez again three hours later. (Id. at 4-5, 46). In that email, she instructed Perez to provide effective contact information before 9:30 am on Tuesday, August 21. (Id.).

Because Perez did not respond by 9:30 am on August 21, Bowens called him but Perez did not answer. (Doc. # 52-5 at 5). Perez responded by email at 12:15 pm that afternoon, stating that he was "heading to a local library now and can use one of their phones." (Id. at 5, 46).

Yet, Perez never contacted Bowens or Pedulla on Tuesday afternoon. (Id. at 5-6; Doc. # 52-6 at 2). Bowens then sent Perez another email at 5:41 pm on Tuesday, directing him to go to work at the Tampa Cigna office by 9:00 am on Wednesday, August 22. (Doc. # 52-5 at 5, 45-46). Under Perez's work-at-home agreement, he could be "required by [his] manager to work in a Company office on a day [he] would normally work at home" and could be required "to spend more time than planned (i.e. up to the entire workweek) in an office due to workload or business need." (Id. at 6, 60).

But Perez did not go into the Tampa Cigna office on Wednesday and did not contact Bowens to inform her that he was not able to go into the office. (Id. at 6-7; Perez Dep. Doc. # 48-1 at 200:12-14). Nor did Perez go into the Tampa Cigna office on Thursday, August 23, and he performed no work that day. (Doc. # 52-5 at 7; Perez Dep. Doc. # 48-1 at 204:16-205:6).

Perez did report to the Tampa Cigna office on Friday, August 24, 2018. (Doc. # 52-5 at 7-8; Doc. # 52-6 at 2-3). He worked there for about one hour until Pedulla "explained that he needed [Perez] to go to his home location to look at the issue." (Doc. # 52-6 at 2). Perez then returned home and spoke with Pedulla on the phone, but they were unable to reestablish Perez's work internet connection. (Id. at 3; Doc. # 54-1 at 2-3). After he was unable to reestablish the internet connection at his home that afternoon, Perez did not return to the Tampa Cigna office and did no further work on August 24, 2018. (Doc. # 52-5 at 8).

In light of Perez's failure to appear at the Tampa Cigna office on Wednesday and Thursday, his working only one hour during that week, and failure to maintain communication, Bowens decided to terminate Perez's employment. (Id.; Doc. # 52-3 at 4). At the time that Bowens extended Perez's PCAP in June 2018, she "had no idea that [] Perez had a wife who had previously worked at Cigna or that she had previously made a claim under Title VII against Cigna." (Doc. # 52-5 at 2-3). Furthermore, Bowens maintains that her "decision to terminate [] Perez's employment had nothing to do with the fact that his wife had allegedly raised EEO complaints against Cigna in the past." (Id. at 8).

Perez initiated this action on April 22, 2019, asserting claims for retaliation under Title VII and the Florida Civil Rights Act (FCRA). (Doc. # 1). Cigna filed its answer on June 27, 2020. (Doc. # 10). The case then proceeded through discovery. The parties mediated before Judge Anthony E. Porcelli, United States Magistrate Judge, on February 11, 2020, but reached an impasse. (Doc. # 62).

Cigna now seeks entry of summary judgment on all of Perez's claims. (Doc. # 46). The Motion is ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if

it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846

F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. **Analysis**

### A. **Rule 56(c) Objection**

Preliminarily, the Court must address Cigna's Rule 56(c) objection to the materials Perez relies on in his response. (Doc. # 66). "Once a party makes a Rule 56(c)(2) objection, 'the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" <u>Campbell v. Shinseki</u>, 546 F. App'x 874, 879 (11th Cir. 2013)(quoting Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments).

Here, Cigna argues that various responses by Perez to Cigna's statement of material facts, many of Perez's own statements of material fact, and exhibits should be stricken.

#### 1. **Improper Record Citations, Legal Argument, and Immaterial Facts**

Cigna complains that Perez fails to provide pinpoint citations to the record, makes improper legal argument, and includes immaterial facts in his response to Cigna's

statement of material facts and in his statement of additional material facts. (Doc. # 66 at 4).

The Court agrees with Cigna that, at numerous points in his response to Cigna's statement of material facts and his recitation of additional material facts, Perez fails to provide pinpoint citations — instead citing to an exhibit in its entirety. See, among others, (Doc. # 54 at ¶¶ 10, 16-18, 37, 42, 46-56, 64-69). And, at other points, Perez cites to exhibits or portions of his deposition that do not refute Cigna's statement of material facts or do not support his asserted material facts. See, among others, (Doc. # 54 at ¶¶ 4, 5, 6, 14, 16-20, 24, 26-31, 54, 58, 64). Thus, as the Court warned the parties in its Order regarding motions for summary judgment, the Court will deem admitted the portions of Cigna's statement of material facts for which Perez failed to provide pinpoint citations or relevant citations in response. (Doc. # 24 at 1-3). The Court will not credit Perez's additional statements of material fact that are not supported by pinpoint citations or for which he cited evidence that does not relate to the asserted material fact.

Nor will the Court credit Perez's legal arguments that he asserts as material facts at certain points. See, among others, (Doc. # 54 at ¶¶ 37, 45-46). The Court previously

advised the parties to refrain from including legal argument in their statements of material fact. <u>See</u> (Doc. # 24 at 2)("Legal argument should not be included in the statement of material facts."). Thus, to the extent Perez makes legal argument in his statement of material facts, the Court will ignore such improper legal argument.

However, the Court is less concerned with Perez's statements of material fact that Cigna deems immaterial to the issues before the Court. The Court is cognizant that Perez is a pro se litigant unfamiliar with drafting briefs and limiting factual allegations to those relevant at summary judgment. To the extent any material facts asserted by the parties are immaterial to the issues before the Court, the Court will simply not consider such immaterial facts in its analysis.

### 2. <u>Unauthenticated Exhibits</u>

According to Cigna, "[m]any of the exhibits [Perez] filed as summary judgment evidence and relies upon to support his proposed facts cannot be authenticated and, for that reason alone, cannot be relied upon by this Court." (Doc. # 66 at 11). Cigna asserts that "Perez has no personal knowledge of such documents outside this litigation and any witness who could authenticate such documents has not provided testimony

in this matter and resides more than 75 miles outside this judicial district and cannot be compelled by [Perez] to attend trial." (Id.); see also Fed. R. Civ. P. 45(c)(1)(A)("A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.").

"At this stage — on summary judgment — [Perez] is not required to furnish evidence in admissible form but only such evidence that *can be reduced to admissible form at trial*." McLeod v. Field Asset Servs., LLC, No. CV 15-00645-KD-M, 2017 WL 338002, at *2 (S.D. Ala. Jan. 23, 2017). Still, now that Cigna has objected that Perez cannot reduce the exhibits in question to admissible form at trial, "[t]he burden is on [Perez] to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, Adv. Comm. Notes, "Subdivision(c)" (2010 Amendments).

Perez does not address Cigna's argument head on. Rather, he merely cites inapplicable case law decided at the motion in limine stage. (Doc. # 68 at 1-3). Perez urges that he "should be given the chance to elicit testimony in an admissible way during trial," but gives no explanation of how he will be able to authenticate or introduce the challenged exhibits at trial. (Id. at 3).

Thus, Perez has not met his burden as proponent of the challenged exhibits "to show that the material is admissible as presented or to explain the admissible form that is anticipated." Campbell, 546 F. App'x at 879. Indeed, the majority of witnesses needed to authenticate many of Perez's exhibits live in Connecticut — outside the Court's subpoena power — and have not been deposed. The Court sustains Cigna's objection to Perez's Exhibits B, D, E, F, G, H, I, J, L, M, and O. The Court will not consider these exhibits in resolving the summary judgment motion.

### 3. **Sham Affidavit**

Cigna argues that Perez's declaration should be disregarded as a "sham affidavit" to the extent it conflicts with his prior deposition testimony. (Doc. # 66 at 12-15).

"The 'sham affidavit' rule is designed to prevent a party from fabricating material issues of fact in response to a

motion for summary judgment." <u>Merritt v. Hub Int'l Sw. Agency</u> <u>Ltd.</u>, No. 1:09-CV-00056-JEC, 2011 WL 4026651, at *2 (N.D. Ga. Sept. 12, 2011)(citing <u>Van T. Junkins & Assocs., Inc., v.</u> <u>U.S. Indus., Inc.</u>, 736 F.2d 656, 656–57 (11th Cir. 1984)), <u>aff'd</u>, 466 F. App'x 779 (11th Cir. 2012). "It permits a district court to disregard an affidavit that 'contradicts [the affiant's prior] testimony on deposition.'" <u>Id.</u> (citation omitted). "For the rule to apply, the affidavit must be 'inherently inconsistent' with the affiant's deposition testimony." <u>Id.</u> "A statement in an affidavit that is merely at odds with earlier deposition testimony is not grounds for exclusion." <u>Id.</u> The Court is mindful that the sham affidavit rule "should be applied sparingly." <u>Kernel</u> <u>Records Oy v. Mosley</u>, 694 F.3d 1294, 1300 n.6 (11th Cir. 2012).

Cigna points out four instances in which Perez's declaration conflicts with his earlier deposition testimony — two of which are particularly relevant to the issues to be decided on summary judgment. First, Perez states in his declaration that he told his supervisor at the time of his termination, Bowens, that his wife had filed a discrimination suit against Cigna and that he was having his deposition taken in support of his wife's claim. (Doc. # 54-1 at 1-2). Yet,

when Perez was asked during his deposition who he had told that his wife was bringing a discrimination claim and that he was being deposed, Perez did not list Bowens. (Perez Dep. Doc. # 47-1 at 147:25-149:19). Thus, the declaration is inconsistent with Perez's testimony on this point.

Next, Perez stated in his declaration that he told Bowens that the disruption to his internet service was "a result of [his] part in serving Cigna with a new lawsuit" (Doc. # 54-1 at 2). At one point in his deposition, Perez testified similarly, saying that he informed Bowens "that [he] believe[d] [his problem with his] Internet connection had to with [him] following up with a process server." (Perez Dep. Doc. # 47-1 at 150:25-151:10). But, upon further examination during the deposition, Perez admitted that he only told Bowens that he believed the connection disruption was "intentional" and that Bowens "did not want to engage any further on the topic." (Perez Dep. Doc. # 48-1 at 214:23-215:23).

Thus, the Court credits only the latter testimony in which Perez admitted he only mentioned his belief that the internet disruption was "intentional," without specifying alleged retaliation based on his involvement with a process server. See Watson v. Forest City Commercial Mgmt., Inc., No. 1:13-CV-3919-LMM, 2014 WL 11281384, at *1 n.1 (N.D. Ga. Dec.

16, 2014)("Plaintiff contends in her Statement of Material Facts, that a genuine issue of fact exists as to how long the incident lasted by pointing to deposition testimony that Plaintiff was asked 'Do you know how long were [sic] you fighting approximately?' and she responded 'No, sir.' That testimony contradicts Plaintiff's earlier deposition testimony, in which she agreed '[the fight] was over in an instant,' and 'it [was] just a matter of seconds.' This Court disregards Plaintiff's testimony that she did not know how long the fight lasted."), aff'd, 618 F. App'x 584 (11th Cir. 2015); Tang v. Jinro Am., Inc., No. CV-03-6477 (CPS), 2005 WL 2548267, at *4 (E.D.N.Y. Oct. 11, 2005)("In his deposition testimony, Plaintiff states both that he signed the agreement, and that he did not sign the agreement. Such inconsistency is not sufficient to create a 'genuinely disputed' issue of fact if only because a statement against one[']s interest trumps one which is self-serving."). And this deposition testimony is in conflict with Perez's declaration.

Notably, Perez failed to address the sham affidavit argument at all in his response. Thus, it appears that Perez does not maintain that his declaration and prior testimony can be harmonized.

In light of the inherent conflicts between the declaration and deposition testimony and Perez's failure to address these conflicts, the Court sustains Cigna's objection regarding portions of Perez's declaration. Where Perez's declaration is in conflict with his earlier deposition testimony, the Court will consider only Perez's deposition testimony.

### 4. <u>Inadmissible Exhibits</u>

Cigna complains that some of Perez's exhibits are not admissible and should not be considered at summary judgment. (Doc. # 66 at 15-16). First, Cigna objects to Perez's citation to its objections and answers to Perez's first and second requests for production of documents because "[r]esponses to requests for production are not admissible at trial and thus, not admissible at the summary judgment stage." (<u>Id.</u> at 15; Doc. # 54-4; Doc. # 54-6). But Cigna cites no case law to support that its objections and answers to Perez's requests for document production are not admissible evidence. Thus, the Court will not exclude this evidence.

Next, Cigna argues that Perez's exhibit containing the Department of Economic Opportunity's file on Perez's claim for unemployment benefits is "entirely irrelevant to the claims in this action and should be excluded." (Doc. # 66 at

16). Further, Cigna notes it did not participate in the proceedings concerning Perez's unemployment benefits at all and that, under Florida law, "any finding or final order by a hearing officer is not conclusive or binding in a separate or subsequent action." (Id.); see also Fla. Stat. § 443.0315 ("Any finding of fact or law, judgment, conclusion, or final order made by a hearing officer, the commission, or any person with the authority to make findings of fact or law in any proceeding under this chapter is not conclusive or binding in any separate or subsequent action or proceeding, other than an action or proceeding under this chapter . . ."). The Court agrees that Perez's exhibit including the record regarding his unemployment claim is not admissible. See Muller-Davila v. Care Placement Home Health Agency, Inc., No. 8:17-cv-505-T-16AAS, 2018 WL 1565457, at *3 (M.D. Fla. Mar. 30, 2018)("[T]he Court finds that the decision of the appeals referee, which denied Plaintiff's reemployment assistance benefits, should not be considered on summary judgment.").

Finally, Cigna contends that Perez cannot rely on Cigna's privilege log because "it is undisputed a privilege log is not substantive evidence that can be considered on summary judgment." (Doc. # 66 at 16). The Court agrees. Cigna's privilege log, which includes brief references to

emails Perez considers relevant evidence, cannot be used to support Perez's claims. See Goldman v. Bracewell & Guiliani, L.L.P., 183 F. App'x 873, 873 n.1 (11th Cir. 2006)(affirming refusal to admit privilege log as substantive evidence).

In summary, the Court sustains in part and overrules in part Cigna's objection as set forth above. However, the Court notes that the ultimate result of this case would be the same even if the Court did not exclude any of Perez's proffered evidence or deem admitted any of Cigna's statements of material fact. As discussed below, Perez has presented no argument or evidence at all regarding pretext and, thus, even if he could have established a prima facie case with his excluded evidence, his claim would nevertheless fail.

### B. <u>The Substantive Claims</u>

Perez asserts claims for retaliation under Title VII and the FCRA. "The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Indeed, "[n]o Florida court has interpreted the Florida statute to impose substantive liability where Title VII does not." Id. Thus, the Court can address both claims with the same analysis.

The burden-shifting framework announced in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), applies to Title VII retaliation cases. <u>Jacomb v. BBVA Compass Bank</u>, No. 18-11536, 2019 WL 5692666, at *3 (11th Cir. Nov. 4, 2019)(citing <u>Brown v. Ala. Dep't of Transp.</u>, 597 F.3d 1160, 1181 (11th Cir. 2010)). Under the <u>McDonnell Douglas</u> framework, the plaintiff employee bears the initial burden of establishing a prima facie case of retaliation, which creates a rebuttable presumption that the employer acted illegally. <u>McDonnell Douglas</u>, 411 U.S. at 802–03. "If the employee meets this burden, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." <u>Jacomb</u>, 2019 WL 5692666, at *3. "If the defendant carries this burden, the employee must demonstrate that the employer's reason was merely pretext for retaliation." <u>Id.</u>

### 1. **Prima Facie Case**

"[A] plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." <u>Bryant v. Jones</u>, 575 F.3d 1281, 1307–08 (11th Cir. 2009).

### i. Protected Activity

"Under Title VII and the FCRA there are two categories of protected activity: those activities that fit under the 'opposition clause' of 42 U.S.C. § 2000e-3(a) and those activities that fit under the 'participation clause.'" <u>Bourne v. Sch. Bd. of Broward Cty.</u>, 508 F. App'x 907, 910 (11th Cir. 2013)(citation omitted). "A plaintiff can show participation in a protected activity by demonstrating that [he] had a subjective, good-faith belief that [his] employer was engaged in unlawful employment practices and that [his] belief was objectively reasonable in light of the facts and record presented." <u>Brown v. City of Opelika</u>, 211 F. App'x 862, 863 (11th Cir. 2006).

Additionally, a plaintiff may proceed under the associational theory of discrimination. This theory applies when an employee who is close to the plaintiff employee, such as a relative, engages in protected activity and the defendant employer then retaliates against that other employee by taking adverse action against the plaintiff employee. <u>See</u> <u>Thompson v. N. Am. Stainless, LP</u>, 562 U.S. 170 (2011)(recognizing that a plaintiff had stated a viable Title VII retaliation claim based on allegations that he was fired

because of an EEOC charge filed by his fiancée against their common employer).

Cigna argues that Perez cannot base his retaliation claim on the associational theory of discrimination – that is, that Cigna retaliated against Perez's wife by taking adverse employment actions against Perez. (Doc. # 46 at 11-13). According to Cigna, Perez has argued that "Cigna's illegal motive was to retaliate against him, not his wife" and Perez's wife "was not an employee of Cigna when the alleged and actionable retaliatory conduct took" place. (Id. at 12-13).

In his response, Perez does not argue that he is proceeding under the associational theory of discrimination, under which the protected activity at issue would only be the actions of his wife. Rather, he "seeks a determination from the trier of fact that the decision to sever employment was motivated by an intent to retaliate against him for having participated in protected activity," including "informal contact by [Perez] with EEO Coordinator Marjorie Stein." (Doc. # 54 at 11-12). This is consistent with Perez's complaint in which he merely alleged that he was retaliated against for his own protected activity in "complain[ing] of discrimination internally to Human Resources and ongoing

participation in Ms. Perez's litigation." (Doc. # 1 at 7-8). Because Perez alleges he was retaliated against because of his own protected activity — rather than his wife's protected activity — the associational theory does not apply.

Regardless of the inapplicability of the associational theory, Cigna concedes that Perez's other alleged conduct "could constitute" protected activity for Perez's prima facie case. (Doc. # 46 at 13). Specifically, Perez's conduct that qualifies as protected activity includes (i) his informing Kania in late August 2017 that he was going on leave to support his wife who had filed a "wrongful suit" against Cigna and that he would be supporting her case; (ii) his deposition testimony in his wife's arbitration in April 2018; and (iii) his helping his wife hire a process server to serve Cigna in August 2018. (Perez Depo. Doc. # 47-1 at 80:5-20, 146:20-151:20). Also, Perez submitted complaints through Cigna's Speak Easy system in December 2017 and June 2018, relating to — in Perez's words — "management's underlying retaliatory action/behaviors from a recent leave of absence and regarding my activity on my wife's claim against Cigna." (Doc. # 52-4 at 2-4, 8-13; Doc. # 57-1 at 14).

Thus, taking all the evidence in Perez's favor, Perez has satisfied the protected activity element of his prima facie case.

### ii. Adverse Employment Action

"A materially adverse action in the context of a Title VII retaliation claim includes any action that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Jacomb, 2019 WL 5692666, at *3 (quoting Crawford v. Carroll, 529 F.3d 961, 973-74 (11th Cir. 2008)).

The Court must first address what alleged adverse employment actions form the basis of Perez's claims. Cigna identifies five alleged adverse employment actions Perez described in his complaint and his deposition: (i) the verbal warning on September 27, 2017; (ii) the PCAP issued on December 20, 2017; (iii) the PCAP extension on January 31, 2018; (iv) the second PCAP extension on June 22, 2018; and (v) Perez's termination. (Doc. # 46 at 13). Cigna argues that the first three adverse employment actions are time barred under Title VII and the first adverse employment action is also time barred under the FCRA. (Id.).

The Court need not address whether the earliest adverse employment actions are time barred, however, because Perez no

longer bases his claims on those actions. Indeed, in his response, Perez only addresses his termination as the basis of his retaliation claim. Specifically, Perez states: "At this juncture, the Court's role is simply to ascertain whether there exists any factual dispute over the motivation behind the termination of Plaintiff's employment." (Doc. # 54 at 11). And, in the "adverse action" section of his response, Perez only identifies his termination as an adverse employment action. (Id. at 12-13).[1]

Thus, Perez has abandoned any other adverse employment actions as bases for his Title VII and FCRA claims. See Edmondson v. Bd. of Trustees of Univ. of Ala., 258 F. App'x 250, 253 (11th Cir. 2007)("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.

_____

[1] In his response to Cigna's Rule 56(c) objection, Perez states that he "does not limit his claim to a review of the termination decision." (Doc. # 68 at 5). Even taking Perez's pro se status into account, this is too little, too late. The response to the motion for summary judgment — filed a month before the response to the objection — was Perez's opportunity to support or clarify his claims. At that juncture, he chose to clearly limit his retaliation claim to the termination decision.

Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Powell v. Am. Remediation & Envtl., Inc., 61 F. Supp. 3d 1244, 1253 n.9 (S.D. Ala. 2014)("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned."), aff'd, 618 F. App'x 974 (11th Cir. 2015).

Therefore, the Court will proceed based on Perez's termination being the only adverse employment action at issue in this case. See Gossard v. JP Morgan Chase & Co., 612 F. Supp. 2d 1242, 1249 (S.D. Fla. 2009)("In her Response to the instant Motion, termination is the only adverse employment action of which Plaintiff complains for her discrimination claims. Thus, she has waived all other allegations of adverse employment actions for her discrimination claims."), aff'd, 389 F. App'x 936 (11th Cir. 2010). Limiting his claim to his termination, Perez has satisfied the adverse employment action element of his prima facie case. See McCray v. Wal-Mart Stores, Inc., 377 F. App'x 921, 923 (11th Cir. 2010)("Termination is an adverse employment action.").

### iii. Causation

"To show a causal link between the protected activity and the adverse employment action, the plaintiff need show only that the two 'were not wholly unrelated.'" Jacomb, 2019 WL 5692666, at *3 (quoting Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)). "At a minimum, the plaintiff must show that the employer was aware that [he] engaged in protected activity at the time it exercised the adverse employment action." Id.

Cigna argues that the decisionmaker regarding Perez's termination — his supervisor, Bowens — did not know that Perez's wife had filed a discrimination suit against Cigna. (Doc. # 46 at 16; Doc. # 52-5 at 2-3, 5). Thus, Cigna reasons, Perez cannot establish causation because Bowens did not know about Perez's protected activity when she made the decision to terminate his employment. See Jacomb, 2019 WL 5692666, at *3; see also McWhorter v. Nucor Steel Birmingham Inc., 304 F. Supp. 3d 1185, 1194 (N.D. Ala. 2018)("[A] close temporal proximity is insufficient if the Defendant provides 'unrebutted evidence' that the decision maker in the adverse employment action was unaware of the protected activity.").

In light of the Court's ruling sustaining in part Cigna's Rule 56(c) objection, there is no evidence in the record

creating a genuine issue of material fact regarding Bowens'
knowledge of Perez's involvement in his wife's discrimination
action against Cigna or Perez's Speak Easy complaint accusing
Cigna of retaliation for such involvement. Thus, there is no
evidence to support that Bowens' decision to terminate Perez
was motivated by retaliation over Perez's protected activity.

To get around Bowens' lack of knowledge, Perez also
argues in his response that "Shipman used [] Bowens as her
'cat's paw' to discharge" him. (Doc. # 54 at 13). He states,
without citing to the record, that "Shipman recommended []
Perez's discharge to [] Bowens." (Id.).

"Several courts have held that even when the harasser in
a Title VII case is not the decisionmaker, if the plaintiff
shows that the harasser employed the decisionmaker as her
'cat's paw' — i.e., the decisionmaker acted in accordance
with the harasser's decision without herself evaluating the
employee's situation . . . — causation is established."
Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249
(11th Cir. 1998)(citation omitted). "In a cat's paw
situation, the harasser clearly causes the tangible
employment action, regardless of which individual actually
signs the employee's walking papers." Id. "In effect, the
harasser *is* the decisionmaker, and the titular

'decisionmaker' is a mere conduit for the harasser's discriminatory animus." Id.

Here, Perez has not presented any evidence that Bowens fired Perez in August 2018 based on a biased recommendation of Shipman's. Rather, the evidence supports that Bowens herself — not Shipman — made the decision to terminate Perez because of his failure to work that week, though she informed Shipman of her intention to terminate Perez. (Doc. # 52-5 at 9). Thus, Shipman did not act as a cat's paw for Bowens.

In short, Perez has not shown that a genuine issue of material fact exists as to the causation of his termination. Therefore, Perez has failed to establish a prima facie case of retaliation.

### 2. Pretext

Alternatively, even if Perez had established a prima facie case regarding his termination, Cigna argues that it had a legitimate non-discriminatory reason for the termination. Cigna maintains that it terminated Perez because he failed to perform any work for a week and was insubordinate when he failed to appear at the Tampa office for work, as his supervisor ordered. (Doc. # 46 at 21). This is a legitimate, non-retaliatory reason for termination.

Thus, the burden shifts back to Perez to offer evidence that Cigna's explanation was merely pretext and that retaliation was the real reason for his termination. To show pretext, an employee must demonstrate "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008)(quoting Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)). In addition to showing that the employer's proffered reason is false, the employee must also show that retaliation was the real reason for the adverse employment action. See Brooks v. Cty. Comm'n of Jefferson Cty., 446 F.3d 1160, 1163 (11th Cir. 2006).

This Perez has not done. Indeed, Perez failed to address pretext at all in his response. (Doc. # 54). Thus, Perez has abandoned any argument that Cigna's proffered reason for his termination was pretextual. See Powell, 61 F. Supp. 3d at 1253 n.9 ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned.").

Nor does the Court's independent review of the record reveal sufficient evidence that Cigna's legitimate, non-discriminatory reason for terminating Perez was false and that the actual reason for Perez's termination was retaliation. Perez acknowledged that he did not work his scheduled hours during the week of August 20 and did not go into Cigna's Tampa office on August 22 and 23, as he was ordered to do by Bowens. (Perez Depo. Doc. # 48-1 at 200:12-14, 204:16-205:6; Doc. # 52-5 at 5-9). And Perez has presented no evidence of other employees who behaved similarly but were not punished or other evidence suggesting that Cigna would not normally terminate an employee for such behavior.

While Perez is clearly dissatisfied with Cigna's decision to terminate him for such an infraction, it is not the Court's place to question an employer's judgment. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."). The Court merely reviews whether an employer's employment decision was motivated by retaliation. Here, Perez has not created a genuine issue of material fact as to that question.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Cigna Health and Life Insurance Company's Rule 56(c) objection (Doc. # 66) is **SUSTAINED in part and OVERRULED in part** as set forth in this Order.

(2) Cigna's Motion for Summary Judgment (Doc. # 46) is **GRANTED.**

(3) The Clerk is directed to enter judgment in favor of Cigna Health and Life Insurance Company and against Plaintiff Pedro Perez on both counts of the complaint.

(4) Thereafter, the Clerk is directed to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 19th day of March, 2020.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE